IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DENNIS RAY MOORE, | § | |
| (Former TDCJ-CID #1130631) | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-05-0213 |
| | § | |
| DOUGLAS DRETKE, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

Plaintiff Dennis Ray Moore, a former inmate in the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"), sues Douglas Dretke, director of the TDCJ-CID, alleging that the TDCJ-CID policies governing the receipt of publications violate his First Amendment and Fourteenth Amendment rights. Dretke filed a motion for summary judgment. (Docket Entry No. 12). Moore has not responded. Based on the pleadings; the motion; the summary judgment record; and the applicable law, this court grants Dretke's motion for summary judgment and, by separate order, enters final judgment. The reasons for these rulings are stated below.

**I.    Background**

Moore alleges that beginning in December 2003, the TDCJ-CID refused to deliver certain men's magazines, including *Penthouse*, *Gallery*, and *High Society*, to him. TDCJ-CID officials told Moore that they had determined that these publications were detrimental

to a prisoner's rehabilitation because they would encourage criminal sexual behavior. Moore argues that the United States Supreme Court's decision in *Lawrence v. Texas,* 539 U.S. 558 (2003), that sodomy laws in Texas were unconstitutional, prohibits the TDCJ-CID from treating homosexual behavior as deviant. Moore asserts that the TDCJ-CID violated his First Amendment rights by denying him these publications. Moore also complains that after the Mail System Coordinator's Panel ("MSCP") decided to deny him the publications, he was unable to appeal through the Dispute Resolution Committee ("DRC"). Moore contends that the TDCJ-CID could have clipped up to three pages of obscene material and still delivered the publications to him.

In a Step 1 grievance filed on March 22, 2004, Moore complained of the enforcement of Correspondence Rule 3.9.10.6 subsection (e), which provides that "publications that contain graphic depictions of homosexuality, sado-masochism, bestiality, incest, or sex with children will ordinarily be denied." Moore complained that his publications were rejected because they contained graphic depictions of women engaging in homosexual activity. Moore stated that he was forced to destroy the publications or send them home at his own expense, and that the denial of the publications prevented him from keeping in touch with culture, society, music, sports, education, politics, and more. Moore stated that as a heterosexual male, he had a right to the publications. In responding to Moore's Step 1 Grievance, the TDCJ-CID stated that the publications were denied due to their content. In response to Moore's Step 2 Grievance, the TDCJ-CID stated that the MSCP and unit mail

rooms would continue to deny materials until the Texas Board of Criminal Justice changed its rules.

Moore seeks an order compelling the TDCJ-CID to allow him to receive the publications, the return of all publications that he was forced to send home, and compensation for the postage necessary to send the publications home. Moore also seeks nominal damages.

Dretke moves for summary judgment, contending that TDCJ-CID regulations limiting access to certain publications meet constitutional standards and are reasonably related to legitimate penalogical interests. Dretke also asserts qualified immunity because Moore has failed to state a constitutional violation and Dretke's actions were objectively reasonable in light of clearly established law.

## II. The Summary Judgment Standard

Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Christopher Village, L.P. v. Retsinas,* 190 F.3d 310, 314 (5th Cir. 1999). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Owsley v. San Antonio Indep. Sch. Dist.,* 187 F.3d 521, 523 (5th Cir. 1999), *cert. denied,* 120 S. Ct. 1423 (2000). A movant for

summary judgment makes such a showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues to support the nonmovant's case. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323 (1986). The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

Once the movant makes this showing, the nonmovant may not rest on the allegations in his pleadings. *See Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.,* 847 F.2d 186, 199 (5th Cir.), *cert. denied,* 488 U.S. 926 (1988). Rather, he must direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324; *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586 (1986). "Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Rushing v. Kansas City Southern Ry. Co.,* 185 F.3d 496, 505 (5th Cir. 1999), *cert. denied,* 120 S. Ct. 1171 (2000).

## III. Analysis

Dretke has submitted a copy of Board Policy 03.91, Administrative Directive 3.72, Revision 4, and Administrative Directive 3.9.10.6.

Administrative Directive 3.9.10.6 provides:

> A publication may be rejected only if: (a) it contains contraband; (b) it contains information regarding the manufacture of explosives, weapons or drugs; (c) it contains material that a reasonable person would construe as written solely for the purpose of communicating information designed to achieve the breakdown of prisons through offender disruption such as strikes or riots; (d) a specific factual determination has been made that the publication is detrimental to prisoner's rehabilitation because it would encourage deviate criminal sexual behavior; (e) it contains material on the setting up and operation of criminal schemes or how to avoid detection of criminal schemes by lawful authorities charged with the responsibility for detecting such illegal activity.
>
> Publications shall not be rejected solely because they advocate the legitimate use of prison grievance procedures or urge prisoners to contact public representatives about prison conditions or because they contain criticism of prison authorities. Publications shall not be excluded solely because they have sexual content. Publications that contain graphic depiction of homosexuality, sado-masochism, bestiality, incest or sex with children will ordinarily be denied. Publications that are primarily covering the activities of any sexual or political rights groups or organizations will normally be admitted.
>
> If a publication is rejected, the offender, the editor and/or the publisher will be provided a written notice of the disapproval and a statement of the reason within seventy-two (72) hours of receipt of said publication on Publication Denial Form. Within the same period, the editor or the publisher shall be notified of the right to and the procedure for appeal. The offender will either be allowed to review the publication at the time of notification or will be given a sufficiently detailed description of the rejected publication to permit effective utilization of the appeal procedures. Then, the offender, the editor or the publisher may appeal the rejection of the publication through the Correspondence Review Procedure outlined in Rule 3.9.14.

(Docket Entry No. 12, Defendant's Motion for Summary Judgment, Ex. C, p. 9).

Administrative Directive 3.9.14 governs the Correspondence Review Procedure and provides:

> 3.9.14.1 An offender, non-offender correspondent, or editor or publisher of a publication may appeal the rejection of any correspondence or publication or may appeal the action of the Classification and Records Office in prohibiting correspondence between an offender and any other person by sending to the Director's Review Committee written notice of such appeal within two (2) weeks of receipt of notification of rejection.
>
> 3.9.14.2 Upon receipt of an appeal notification, the correspondence or publication in question shall be sent to the Director's Review Committee.
>
> 3.9.14.3 The Director's Review Committee shall render its decision within two (2) weeks after receiving the appeal, and will notify the parties involved of its decision in writing within forty-eight (48) hours.
>
> 3.9.14.4 The composition of the Review Committee shall be determined by the Director and may be changed from time to time at the discretion of the Director. In any case, the committee shall be comprised of at least five (5) members, including the Assistant Director for Classification and Records, who will act as chairman, the Director of Classification and at least one Unit Warden. In no case, however, shall a TDCJ-ID official who has participated in or who has line responsibility for a rejection or denial (in other words, was assigned to the Unit/Facility at which the rejection or denial occurred) sit on the committee considering that rejection or denial.

(Docket Entry No. 12, Defendant's Motion for Summary Judgment, Ex. C, p. 10).

Dretke submitted an affidavit explaining these policies:

> The Texas Board of Criminal Justice in April, 2004, approved changes to policies related to inmate correspondence. Effective June 1, 2004, the Texas Department of Criminal Justice (TDCJ) began operating under Board Policy (BP) 03.91, which contains new procedures for both incoming and outgoing inmate correspondence. . . . As part of those changes, all sexually explicit images contained in publications or in offender mail will be considered contraband and will be prohibited. In order that offenders may permit existing subscriptions to expire, the ban against sexually explicit images in publications does not take effect until June 1, 2005. As of June 1, 2004, however, offenders were no longer permitted to receive sexually explicit photographs in the mail (photographs sent to them by family members or other individuals).
>
> Sexually explicit is defined by BP-03.91 as "material that shows the frontal nudity of either gender, including the exposed female breast(s) with nipple(s) or areola(s), or the genitalia or anus of either gender. The chests of infants and pre-pubescent children are not considered breasts." . . .
>
> Publications constituting educational, medical, scientific, or artistic materials, including but not limited to, anatomy medical reference books, general practitioner reference books and/or guides, National Geographic, or artistic reference material depicting historical, modern and/or post modern art era, may be permitted on a case-by-case basis. BP-03.91's definition of sexually explicit images does not include written text. Offenders may purchase and possess sexually explicit writings, so long as they do not contain sexually explicit images or otherwise violate BP-03.91 (such as including descriptions of bestiality, incest, or other graphic descriptions of sexual behavior in violation of the law). For instance, one popular and early example of sexually explicit literature, *Lady Chatterly's Lover,* by D.H. Lawrence, is permissible for offenders to purchase and possess. The intent of the new policy on sexually explicit materials is to encourage a rehabilitative environment for offenders and to discourage sexual harassment of staff.

(Docket Entry No. 12, Defendant's Motion for Summary Judgment, Ex. A, pp. 1-2).

The Board Policy 3.91 dated June 2004 supercedes Administrative Directive 3.91, revision 1, dated May 19, 2000.

## IV. The First Amendment Claim

A prisoner retains "those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penalogical objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). In *Thornburgh v. Abbott,* 490 U.S. 401, 413-14 (1989), the Supreme Court upheld the constitutionality of federal prison regulations that authorized wardens, under specified criteria, "to reject incoming publications found to be detrimental to institutional security." *Thornburgh,* 490 U.S. at 403. The Court relied on *Turner v. Safley,* 482 U.S. 78 (1987), in which the Court formulated a "standard of review for prisoners' constitutional claims that is responsive both to the policy of judicial restraint regarding prisoner complaints and [to] the need to protect constitutional rights." *Id.* at 85. When a prison regulation or policy impinges on an inmate's constitutional rights, the regulation or policy is valid if it is reasonably related to legitimate penalogical interests. *Turner,* 482 U.S. at 89.

In *Guajardo v. Estelle,* 580 F.2d 748 (5th Cir. 1978), the Fifth Circuit considered prison officials' authority to censor incoming publications that they considered pornographic. In rejecting the argument that prison officials could ban only materials that had been judicially declared obscene – that the plaintiffs' First Amendment rights were not affected

by the imprisonment – the Fifth Circuit held that such rights "cannot be evaluated without reference to that environment and to the type of audience it involves." *Id.* at 762. Noting that nonconsensual homosexual activity was a significant problem in Texas prisons, the Fifth Circuit concluded that officials could, consistent with the First Amendment, limit access to sexually explicit material. The Fifth Circuit set out the following guidelines: "Before delivery of a publication may be refused, prison administrators must review the particular issue of the publication in question and make a specific, factual determination that the publication is detrimental to prisoner rehabilitation because it would encourage deviate, criminal sexual behavior. Prisoners must, of course, be allowed to appeal that decision through proper administrative channels." *Id.* (citations omitted). These guidelines were formalized as Rule 3.9.10.6, which was invoked to withhold Moore's magazines. (Docket Entry No. 1, Complaint, Attachment 1, p. 1). Rule 3.9.10.6 stated in part that "[p]ublications shall not be excluded solely because they have sexual content. Publications that are primarily covering the activities of any sexual or political rights groups or organizations will normally be admitted." (Docket Entry No. 12, Defendant's Motion for Summary Judgment, Ex. C, p. 9). This language from Rule 3.9.10.6, provides that graphic depictions of homosexuality, sadomasochism, and incest would ordinarily be denied, while publications primarily covering the activities of sexual rights groups would not, was added as part of a settlement agreement in the same litigation. The settlement was approved as fair and reasonable. *See Guajardo v. Estelle,* 568 F. Supp. 1354, 1364 (S.D. Tex. 1983).

In *Thompson v. Patteson,* 985 F.2d 202 (5th Cir. 1993), the Fifth Circuit held that a claim that the TDCJ could not constitutionally limit access to sexually oriented materials was foreclosed by *Guajardo* and Supreme Court precedent. The Fifth Circuit noted that in *Guajardo*, it struck a balance between the prison's rehabilitation and security objectives and the prisoner's First Amendment rights by authorizing the procedure challenged in *Thompson*. The Fifth Circuit explained that "[o]ur Guajardo decision long ago settled that the general practice authorized by Rule 3.9.10.6 fits easily within the reasonableness standard – "[s]uch regulations are 'valid if [they are] reasonably related to legitimate penalogical interests.'" *Thompson,* (citing *Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989) (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987))).

Moore complains that the TDCJ-CID violated his First Amendment rights when it denied him access to *Penthouse, Gallery,* and *High Society* on the ground that they contained graphic depictions of homosexual activity. Moore challenges the application of Correspondence Rule 3.9.10.6. The Fifth Circuit expressly rejected this claim in *Thompson*. Dretke is entitled to judgment as a matter of law on this claim.

## V. The Equal Protection Claim

Under the Equal Protection Clause, the plaintiff must show that the defendant acted with discriminatory purpose. *See McCleskey v. Kemp,* 481 U.S. 279, 292 (1987); *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 390-92 (1982); *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 265 (1977); *Washington v.*

*Davis,* 426 U.S. 229, 240 (1976). While the plaintiff need not prove that a discriminatory intent was the sole motivating factor, the plaintiff must show that a discriminatory purpose was a motivating factor. *Village of Arlington Heights*, 429 U.S. at 265.

In *Thompson v. Patteson,* 985 F.2d 202 (5th Cir. 1993), the prisoner alleged that he was subjected to disparate treatment in that other inmates were allowed to receive publications of comparable content. The Fifth Circuit concluded:

> We think it is entirely clear that such an equal protection claim has no arguable merit. The objectives being pursued by the defendants were the legitimate and neutral ones of preserving prison security and promoting rehabilitation, and in their judgment exclusion of Thompson's books and magazines furthered those objectives. The rules necessarily confer a certain degree of discretion on the prison authorities in making this determination, and absent any allegation of an improper motive, a mere claim of inconsistent outcomes in particular, individual instances furnishes no basis for relief.

*Thompson,* 985 F.2d at 207. Like the inmate in the *Thompson* case, Moore alleges discrimination against certain requested publications. The Fifth Circuit rejected this equal protection claim in *Thompson.* Dretke is entitled to summary judgment on this claim.

## VI.    The Due Process Claim

Moore complains that he was deprived of property while he was confined in the TDCJ-CID. He explains that he purchased subscriptions to certain magazines, but the TDCJ-CID did not deliver them to him. An inmate's allegation that his property was lost or damaged, or its receipt delayed by a prison official, does not state a claim under 42 U.S.C. § 1983, even when the prison official acted intentionally. *Hudson v. Palmer*, 468 U.S. 517

(1984). In Texas, when an inmate's property is taken without compensation, he has a remedy in state court, not a federal court claim under 42 U.S.C. § 1983 for loss or damage to property, unless there is no post-deprivation remedy or the remedy is inadequate. *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984). Moore has made neither of the required showings.

Moore's pleadings show that the Mail System Coordinator's Panel ("MSCP") notified him of the denial of certain publications. The MSCP is the body designed to assist in the maintenance and coordination of the Uniform Mail System. The MSCP serves as the centralized authority to review publications for initial unit acceptance or denial. (Docket Entry No. 12, Defendant's Motion for Summary Judgment, Ex. B, p. 3). Prison officials explained that the requested publications contained depictions of homosexual activity and were prohibited under Rule 3.9.10.6. (Docket Entry No. 1, Complaint, Attachment 1, p. 1).

It appears that Moore tried to appeal the denial of the publications to the Director's Review Committee ("DRC"), as provided in Administrative Directive 3.9.14.1. (Docket Entry No. 12, Defendant's Motion for Summary Judgment, Ex. C, p. 10). The DRC upheld the decision of the MSCP's denial because DRC guidelines prohibited the publications' content. (Docket Entry No. 1, Complaint, Attachment 1, p. 2).

The Texas Department of Criminal Justice provides a two-step procedure for presenting administrative grievances. *See Wendell v. Asher,* 162 F.3d 887, 891 (5th Cir. 1998)(citing Texas Department of Criminal Justice, Administrative Directive No. AD-03.82

(rev.1)(Jan. 31, 1997)).[1] Moore filed a Step 1 Grievance on this issue. The unit grievance officer found that the publications were denied because of their content. Moore filed a Step 2 Grievance. The departmental grievance investigator responded that the Correspondence Rules were established in accordance with the *Guajardo* decision. The departmental grievance investigator also told Moore that the MSCP and unit mail rooms would continue to deny material prohibited under Administrative Directive 3.9.10.6 until the Texas Board of Criminal Justice changed its rules. (Docket Entry No. 1, Complaint, Attachment 2, p. 2). Moore has not shown that there was no available postdeprivation remedy or that the remedy was inadequate. Dretke is entitled to summary judgment on this claim.

## VII. The Remaining Claims

Suits for damages against the state are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Under the Eleventh Amendment, an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court. *Puerto Rico*

---

[1] Step 1 requires the prisoner to submit an administrative grievance at the institutional level. TDCJ Administrative Directive No. AD-03.82 (rev.1), Policy ¶ IV (Jan. 31, 1997). After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker for step 1 of the process, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator. *Id.* Step 2 permits the prisoner to submit an appeal to the division grievance investigation with the Institutional Division of the TDCJ. After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for step 2 of the process, which is the director, deputy director, regional director or assistant director. *Id.*

*Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). This bar remains in effect when state officials are sued for damages in their official capacity. *Cory v. White*, 457 U.S. 85, 90 (1982). To the extent Moore sues Dretke for damages in his official capacity, those claims are barred by the Eleventh Amendment.

The TDCJ-CID is an instrumentality of the state and is immune from suit under the Eleventh Amendment. *Harris v. Angelina County*, 31 F.3d 331, 338 (5th Cir. 1994) (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1136-37 & n.75 (5th Cir. 1982) (dismissing claims against board of Texas Department of Corrections (Texas Department of Criminal Justice - Institutional Division), predecessor of TDCJ-CID, since board was "merely an agency of the state"), *cert. denied*, 460 U.S. 1042 (1983)); *Loya v. Texas Dep't of Corrections*, 878 F.2d 860, 861 (5th Cir. 1989) (holding Texas Department of Criminal Justice - Institutional Division immune from suit under Eleventh Amendment).

Although the Eleventh Amendment does not bar Moore's claim for prospective relief, he has not demonstrated that a TDCJ-CID policy caused a violation of the constitutional right he alleges. *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quoting *Monell v. Dept. of Social Servs. of New York*, 436 U.S. 658, 694 (1978)). Moreover, Moore's claims for injunctive relief are moot because he was released on parole on October 27, 2005. (Docket Entry No. 8). *Cooper v. Sheriff Lubbock County*, 929 F.2d 1078, 1084 (5th Cir. 1991); *Beck v. Lynaugh*, 842 F.2d 759, 762 (5th Cir. 1988).

To the extent Moore sues Dretke in his individual capacity, qualified immunity applies. (Docket Entry No. 12, Defendant's Motion for Summary Judgment, pp. 1-2). In *Siegert v. Gilley,* 500 U.S. 226 (1991), the Supreme Court held that to defeat qualified immunity, a plaintiff must show a violation of a clearly established constitutional right. *Id.* at 231. In making this determination, the court considers currently applicable constitutional standards. *Rankin v. Klevenhagen,* 5 F.3d 103, 106 (5th Cir. 1993). If the plaintiff fails this step, the defendant is entitled to dismissal of the complaint. If the court answers the first inquiry affirmatively, then the court must decide whether the defendants' conduct was objectively reasonable. In this case, Moore has not stated a violation of a constitutional right. This court has also determined that the decision to deny the publications was objectively reasonable.

Moore has also asserted claims against the director of TDCJ-CID. Individual liability under section 1983 may not be based on a supervisor's vicarious liability for the acts or omissions of employees. *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 534 (5th Cir. 1997). Supervisory officials may be liable if their own action or inaction, performed with a certain degree of gross negligence or deliberate indifference, proximately causes a constitutional violation. *Thompson v. Upshur County, Texas,* 245 F.3d 447, 459 (5th Cir. 2001). Construed liberally, Moore alleges that the director of the TDCJ-CID is liable for his subordinates' actions. Such allegations fail to state a claim under section 1983. *See Monell,* 436 U.S. at 691-95; *Alton v. Texas A & M Univ.,* 168 F.3d 196, 200 (5th Cir. 1999); *Southard*

*v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 551 (5th Cir. 1997); *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). Moore has not raised a fact issue as to personal involvement necessary for supervisory liability.

## VIII. Conclusion

Defendant Dretke's motion for summary judgment, (Docket Entry No. 12), is granted. Moore's claims against Douglas Dretke are dismissed with prejudice. All remaining pending motions are denied as moot.

Final judgment will be entered by separate order.

SIGNED on June 14, 2006, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge